IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

OSCAR D. MOORE, SR, ET AL                                                    PLAINTIFFS

VS.                                                    CIVIL ACTION NO. 1:10-CV-178-NBB-DAS

TRUE TEMPER SPORTS, INC.                                                    DEFENDANT

## ORDER

This cause comes before the court upon the defendant's motion to dismiss. Upon due consideration of the motion, response, and supporting and opposing authority, the court is ready to rule.

### Factual and Procedural Background

The plaintiffs, Oscar D. Moore, Sr., Steve Lowe, Rodney Hampton, and Clyde Reddick, Jr., filed this action against their employer, True Temper Sports, Inc., pursuant to 42 U.S.C. § 2000(e) and 42 U.S.C. § 1981, alleging employment race discrimination. The plaintiffs are African-American males.

On two occasions, the plaintiffs refused to wear t-shirts adorned with the company name and a union name that they were directed to wear by their employer during site visits by the defendant's customers.  Plaintiffs were directed to wear the shirts on March 4, 2008, July 29, 2008, and September 23, 2008.

First, the plaintiffs refused to wear the shirts on March 4, 2008. As a result, the plaintiffs were transferred out of the plant to work in another location and given a warning. The plaintiffs allege that similarly situated white employees were given paid vacation for that day or were not required to wear the shirts.  The plaintiffs contend that they complained to management about these circumstances but were denied proper treatment.

Second, the plaintiffs refused to wear the shirts on July 29, 2008. Consequently, the

defendant suspended the plaintiffs without pay and issued write-ups on their records. The

plaintiffs allege that white employees refused to wear the shirts, that these white employees were

not required to wear the shirts, and that these white employees were not disciplined, suspended,

written up, or docked pay.  Again, the plaintiffs allege that they complained to management

regarding these circumstances but were denied proper treatment.

Third, the plaintiffs wore the shirts on September 23, 2008. They allege that they were

motivated to comply with the defendant's orders because they feared being fired if they did not

wear the shirts.  Plaintiffs allege that similarly situated white employees were not required to

wear the shirts.

The plaintiffs filed the present suit claiming that they are entitled to back pay,

compensatory damages, and punitive damages. The defendant moved to dismiss pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure claiming plaintiffs have failed to allege a

cognizable basis for relief.

Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129

S.Ct. 1937, 1949(2009)(citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely

granted." *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232-33 (5th Cir. 2009).  A court must

accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the

2

plaintiff. *Id.* But the court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal,* 129 S.Ct. at 1949-50.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly,* 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand,* 565 F.3d at 255-57. If there are insufficient factual allegations to raise a right to relief above the speculative level or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly,* 550 U.S. at 555; *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007).

<u>Analysis</u>

Plaintiffs have filed their race discrimination claim pursuant to Title VII and 42 U.S.C. § 1981. Title VII of the Civil Rights Act of 1964 states that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). "When used as parallel causes of action, Title VII and section 1981 require the same proof to establish liability." *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 n.2 (5th Cir. 1999); *see Pegram v. Honeywell, Inc.,* 361 F.3d 272, 281, n.7 (5th Cir. 2004)("[R]ace discrimination claims brought pursuant to section 1981 are governed by the same evidentiary framework applicable to employment discrimination claims under Title VII."). To establish a prima facie case of race discrimination, plaintiffs must establish, by a preponderance of the

evidence, that they (1) are members of a protected group or class; (2) qualified for their

positions; (3) suffered adverse employment actions; and (4) similarly situated individuals outside

the protected class were treated more favorably. *McDonnell Douglas Corp. v. Green*. 411 U.S.

792, 802 (1973); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

The third element, whether the plaintiffs suffered an adverse employment action, is the

only element at issue in terms of the employer's motion to dismiss and will be the focus of this

analysis. The plaintiffs' complaint alleges race discrimination and not retaliation. The range of

employer actions prohibited by Title VII's anti-retaliation provisions is broader than the range

covered by its anti-discrimination provisions. The plaintiffs' response to the employer's motion

to dismiss states the retaliation standard instead of the discrimination standard. In discrimination

cases, the Fifth Circuit continues to require an "ultimate employment decision." *McCoy,* 492

F.3d at 559-60.[1]

Ultimate employment decisions include acts such as hiring, granting leave, discharging,

promoting, demoting, and compensating. *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002);

*Sharp v. City of Houston,* 164 F.3d 923, 933 n. 21 (5th Cir. 2001). Every decision made by an

employer that arguably might have some tangential effect upon future ultimate employment

decisions is not actionable. *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 708 (5th Cir. 1997).

An employment action that "does not affect job duties, compensation, or benefits" is not an

---

[1] The U.S. Supreme Court in *Burlington Northern & Santa Fe Ry. Co. v White,* 548 U.S. 53, 68 (2006),
held that in retaliation cases, an employee suffers an adverse employment action if "a reasonable
employee would have found the challenged action materially adverse," meaning that "it might well have
dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington* thus
changed the standard in the Fifth Circuit for retaliation claims, but *Burlington* does not affect
discrimination claims, where the Fifth Circuit continues to require "ultimate employment decisions."
*McCoy,* 492 F.3d at 559-60 ("[O]ur precedent recognizing only 'ultimate employment decisions' as
actionable adverse employment actions remains controlling for title VII discrimination claims[.]). The
Fifth Circuit precedent cited in this opinion decided before *Burlington* has thus been abrogated in the
context of retaliation claims but remains applicable in the context of defining an ultimate employment
decision.

ultimate employment action. *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 769 (5th Cir. 2001). A shift change, without more, is not an ultimate employment action. *Benningfield v. City of Houston,* 157 F.3d 369, 377 (5th Cir. 1998)(transferring employee to night shift is not ultimate employment action where duties, pay, and benefits remained the same).

Accepting the well-pleaded facts in the complaint as true, the plaintiffs' complaint states a claim for relief that is plausible on its face. Transfers, denials of paid leave, and suspensions can be ultimate employment actions. *Pegram,* 361 F.3d at 283 (transfer); *Mota v. Univ. of Tex. Houston Health Sci. Ctr.,* 261 F.3d 512, 521 (5th Cir. 2001) (denial of paid leave); *Polanco v. City of Austin, Tex.,* 78 F.3d 968 (5th Cir. 1996) (suspension); *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086 (5th Cir. 1995)(suspension).[2]

<u>Conclusion</u>

For the above and foregoing reasons, it is ORDERED and ADJUDGED that the employer's motion to dismiss is DENIED.

THIS the <u>27th</u> day of September, 2011

<u>Neal Biggers</u>
NEAL B. BIGGERS, JR.
UNITED STATES DISTRICT JUDGE

---

[2] The employer cited no binding precedent for its argument that a suspension is not an ultimate employment action. The Eleventh Circuit opinion cited is not binding, even in the Eleventh Circuit because it is unpublished. *McGarity v. Mary Kay Cosmetics,* 1998 WL 50460, *3-5 (N.D.Tex. 1998), in fact, holds that a three-day suspension is an adverse employment action. The other two Texas district court cases cited by the employer incorrectly state the holding of *McGarity* and then rely on the incorrect holding to reach an opposite conclusion. In *Zaffuto v. City of Hammond,* 308 F.3d 485, 493 (5th Cir. 2005), the Fifth Circuit declined to rule on whether a 240 hour suspension was an ultimate employment action, instead finding that the case could be determined with respect to the causation element. Regarding the suspension, the court stated, however: "Zaffuto's suspension clearly affected the terms of his employment during the suspension, and it is arguably more severe than denying an employee paid leave, or an extension in unpaid leave . . . ." *Id.*