UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


OSCAR D. MOORE, SR., et al.                                                                    PLAINTIFFS

V.                                                                      CIVIL ACTION NO.1:10CV178-DAS

TRUE TEMPER SPORTS, INC.                                                                        DEFENDANT

MEMORANDUM OPINION

Presently before the court is the motion for summary judgment filed by the defendant True Temper Sports, Inc. After reviewing the motion, response, and authorities, the court finds as follows:

FACTUAL BACKGROUND

Because a major customer was considering moving its business to another vendor, True Temper planned a series of site visits with this customer at its manufacturing facility. One part of its effort to make a good impression on the customer's representatives was to require its workforce to wear matching T-shirts during the visits. A T-shirt, emblazoned with company and union logos, was provided to each employee.

The four black plaintiffs refused to wear the T-shirts for the first visit in March 2008. They were assigned to work away from the main facility that day, so they would not be seen by the visitors. The plaintiffs continued their defiance during the July 2008 visit and were suspended for five days. Fearing they would be fired if they did not comply, the plaintiffs wore the T-shirts for a visit in September 2008. They allege that white employees were similarly defiant but not similarly punished.

The plaintiffs, after exhausting their administrative remedies, filed this action alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 and Title 42 U.S.C. § 1981. They also filed a grievance with the National Labor Relations Board. The defendant settled that grievance, concurrently with the filing of this action, paying the plaintiffs for the time they were suspended and expunging the discipline from their personnel records.

The defendant has moved for summary judgment, arguing that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law.

## DISCUSSION

## SUMMARY JUDGMENT

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 requires that materials supporting or opposing the motion be admissible at trial.

Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof. A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the party with the burden of proof cannot produce any summary judgment evidence on an essential element of his claim, summary judgment is required. *Geiserman v. MacDonald,* 893 F.2d 787, 793 (5th Cir. 1990).

The moving party must make an initial showing that there is no dispute of material fact or that there is a failure of proof of an element of the claim. If this showing is made, the nonmoving party must go beyond pleadings and submit specific evidence showing that there are one or more genuine issues of fact to be resolved by trial. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(emphasis omitted). While all facts are considered in favor of the nonmoving party, including all reasonable inferences therefrom, *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995), the nonmovant has the burden in responding to summary judgment to designate sufficient facts to show a material dispute to be resolved by trial.

> This burden is not satisfied with "some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S. Ct. at 1356, by "conclusory allegations," *Lujan,* 497 U.S. at 871-73, 110 S. Ct. at 3180, by "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir.1994), or by only a "scintilla' of evidence," *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994). *Little,* 37 F.3d at 1075.[1]

A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248(1986). Summary judgment is appropriate if "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993). If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted.

---

[1] Quoting *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) and *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990).

DISCRIMINATION

The plaintiffs sue pursuant to both Title VII and 42 U.S.C. § 1981. Under Title VII, it is "an unlawful employment practice for an employer ... to discharge any individual, or otherwise "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title 42 U.S.C. § 1981 guarantees that "[a]ll persons ... shall have the same right to make and enforce contracts, ... and to the full and equal benefit of all laws and proceedings ... as is enjoyed by white citizens." *Id.* This statute protects against private, as well as governmental discrimination. 42 U.S.C. § 1981 ©. When "used as parallel causes of action, Title VII and §1981 require the same proof to establish liability." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999).

A. THE PRIMA FACIE CASE

Because the plaintiffs' attempt to prove discrimination through circumstantial evidence, the court analyzes their claim under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* standard, the plaintiff must first establish their prima facie case of discrimination by showing that they are: (1) members of a protected group; (2) qualified for the positions they hold; (3) that they suffered an adverse employment action; and (4) were either replaced by someone outside the protected group or otherwise treated less favorably than employees not in the protected group. *Okoye v University of Texas Houston Health Sci Ctr.,* 245 F.3d 507, 513 (5th Cir. 2001). Proof of disparate treatment can establish the fourth element of the prima facie case. *See Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005).

The defendant concedes that the first two prongs of the plaintiff's prima facie case are established but argues the plaintiff failed to prove either of the final two elements. The facts before the court are undisputed, though the parties interpret some of the facts differently. On the first visit – on March 4, 2008 – ten True Temper employees refused to wear the T-shirts. The defendant sent one white employee, Gerald Fink, home. This, according to the defendant, was a result of some confusion among management regarding how to respond to the situation. The defendant assigned work outside the factory to four black plaintiffs and the five remaining white coworkers and paid all of them for the day. According to the defendant, none of these employees were written up or disciplined. The plaintiffs claim the defendant gave them a warning and/or a write-up for the March incident.

In advance of the second planned visit on July 29, 2008, each employee, excepting Fink, received a letter from management warning them that they must wear the T-shirts or be subject to discipline for insubordination.[2] Management met with the employees to urge them to comply and to make sure that they understood the consequences of failing to comply with the company's directive. The four plaintiffs refused to comply with this order and received a five-day suspension. There is no admissible proof before the court regarding whether there were any white employees who also defied the T-shirt edict in July, nor proof of what consequences, if any, followed.

During the September 2008 visit, the plaintiffs, fearing for their jobs, capitulated and wore the T-shirts. Their complaint and discovery responses claim that other white employees

---

[2] Fink was inadvertently omitted because his name was not on the list of employees who had worked off-site during the March visit.

did not wear their shirts during this visit but were not punished. Again, the plaintiffs have not submitted any admissible proof about specific white employees' actions or any consequences.

The defendant first argues that the plaintiffs have not established an 'adverse employment action,' by characterizing the plaintiffs' suspensions as being 'with pay.' It ignores that it took the plaintiffs almost two years and an NLRB grievance to get their paychecks. The plaintiffs are no more reasonable. They filed the complaint in this court, demanding their back pay and the expungement of the discipline from their personnel records, one day before those demands were mooted by the NLRB settlement. Yet they continue to assert and itemize the 'lost' wages of each plaintiff, ignoring that they have obtained this requested relief long ago. A different forum and different theory of liability will not support a second recovery for the same wages. The court can only conclude that the plaintiffs filed this suit in an unmerited attempt to obtain punitive damages and attorneys fees because the plaintiffs presumably knew about the NLRB settlement before they filed this lawsuit.

The parties have not cited a comparable case and the court has not located one in its research. For the purposes of this summary judgment, the court treats the suspension as 'without pay,' though the claim for wages is now moot. Under Fifth Circuit case law, a suspension without pay for as little as two days constitutes an adverse employment action. *Lemaire v. Louisiana Dept. of Transp. and Development*, 480 F.3d 383. 384 (5th Cir. 2007). Therefore, the plaintiffs have established this element of their prima facie case.

The defendant also argues that the plaintiffs have failed to establish any disparate treatment between the plaintiffs and similarly situated white employees. The plaintiffs' sworn complaint and discovery make numerous allegations that the plaintiffs received harsher

treatment, but they do not provide specific facts to prove their allegations. Therefore, none of these documents creates triable issues of fact regarding disparate treatment. *Lujan,* 497 U.S. at 871-73. The plaintiffs submitted no affidavits with their response to the motion but included three unsworn statements from white employees. On the defendant's motion, these were struck. An unsworn statement is not competent summary judgment evidence because it does not comply with the requirements of Rule 56 (c). *Nissho-iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305-07 (5th Cir. 1988); *Okoye v. University of Texas Houston Health Sci. Ctr.,* 245 F.3d 507, 515 (5th Cir. 2001). After the court granted the motion to strike, the plaintiffs took no steps to submit these statements in affidavit form. [3] Because the plaintiffs have failed to produce evidence to support this element of their prima facie case, the defendant is entitled to summary judgment.

## B. LEGITIMATE, NONDISCRIMINATORY REASON AND PRETEXT

Alternatively and additionally, the defendant argues the plaintiffs' conduct was an act of insubordination and that the employer therefore had a legitimate, nondiscriminatory reason for the imposition of the suspensions. According to the defendant, the plaintiffs have failed to produce evidence that the proffered reason is a pretext for discrimination. Once the plaintiffs have established a prima facie case, the defendant then has the burden of producing a legitimate, nondiscriminatory explanation for the adverse employment action. *Reeves v. Sanderson*

---

[3] The court further notes that the statements, had they been submitted in proper affidavit form, would not be sufficient to present issues of triable facts. Gerald Finch's statement confirms that he did not wear the T-shirt during the March visit and was sent home but paid for the day. The defendant explains this different treatment was the result of management confusion at the beginning of the day. Given that five other white men joined the black plaintiffs to work offsite that day, no reasonable jury could find Finch's treatment to be proof of racial animus. The other two individuals were not similarly situated. One was working the third shift which would be after the visit concluded and another opted to take a vacation day in lieu of complying.

*Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000). The defendant's burden at this stage is merely one of production, not persuasion. *Id.*

If the defendant can articulate a reason that, if believed, would support a finding that the action was nondiscriminatory, then the inference of discrimination created by the plaintiff's prima facie case disappears, and the fact finder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993). The plaintiff must present evidence that the employer's proffered reason is a pretext for discrimination. *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). A plaintiff must "substantiate his claim of a pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002).

Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence." *Reeves*, 530 U.S. at 143). "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals." *Bryant*, 413 F.3d at 478. To establish disparate treatment, the plaintiff must show that the employer gave preferential treatment to another employee under 'nearly identical' circumstances." *Id.* Alternatively, "[a]n explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton*, 333 F.3d at 578.

The plaintiff need not show that discrimination was the sole motive for an adverse employment action. It is sufficient if there is proof that discrimination was one of the motivating factors among others for an adverse employment action. See generally *Rachid v. Jack-in-the-*

*Box, Inc.*, 376 F.3d 305 (5th Cir. 2004). A plaintiff asserting a Title VII discrimination claim can utilize the mixed-motive analysis whether presenting direct or circumstantial evidence of discrimination. *Desert Palace Inc. v. Costa*, 539 U.S. 90, 101 (2003).

There is no factual dispute between the parties about the insubordination. The defendant explains it gave the order to wear the T-shirts in order to help the company put its best foot forward during the customer visits. The plaintiffs' response does not suggest that the stated reason for the sanctions is pretext. Rather, they suggest a disagreement about the propriety of the company's decision. The plaintiffs contend that the company was acting wrongfully and trying to "create a false impression" and "mislead" its customer. While the plaintiffs seem to be arguing that they were correct to defy their employer, they do not point to any facts from which racial animus on the part of the employer may be inferred. The plaintiffs, as employees, do not have to endorse the orders of their supervisors, in order to be obliged to comply with those orders or face sanctions. Nothing in the record indicates that race played any role in the original order, the plaintiffs' rebellion, nor the punishment imposed upon them. Even if a jury agreed with the plaintiffs that the decisions made by True Temper were incorrect, ill advised, or unseemly, there is no liability for failing to make proper decisions, so long as the decisions are nondiscriminatory. *See Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

The only evidence supporting the plaintiffs' allegations is that one white employee, Gerald Fink, got paid for a day of work he did not perform when he was, like the plaintiffs, also insubordinate. The defendant insists that this was error, not discrimination. With five other white employees having worked that day, along with the black plaintiffs, this evidence does not rebut the proffered nondiscriminatory reason given for the plaintiffs' suspensions. No

9

reasonable jury could find that this discrepancy proves these plaintiffs have been the victims of racial discrimination. *Armstrong*, 997 F.2d 62 (5th Cir. 1993).

For the reasons stated above, the defendant's motion for summary judgment is granted. The complaint will be dismissed with prejudice and costs taxed to the plaintiffs. A separate judgment will be entered.

This the 1st day of August, 2012.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE